UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| JOEL OTIS BULLOCK, JR., | ) | |
| | ) | |
| Petitioner, | ) | Case No. 1:04-cv-556 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| KURT JONES, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |
| _____ | ) | |

This is a habeas corpus proceeding brought by a state prisoner pursuant to 28 U.S.C.

§ 2254. Petitioner is serving five sentences imposed by the Wayne County Circuit Court on October

3, 2002, after petitioner entered a plea of guilty. The crimes of conviction, and sentences, are as

follows:

| | | |
|---|---|---|
| Arson of a dwelling (Mich. Comp. Laws § 750.72) | - | 5-to-20 years |
| 1st degree home invasion<br>(Mich. Comp. Laws § 750.110a(2)) | - | 5-to-20 years |
| Preparation to burn property<br>(Mich. Comp. Laws § 750.77(1)(d)(i)) | - | 1-to-4 years |
| Discharge of a firearm towards a dwelling<br>(Mich. Comp. Laws § 750.234b) | - | 1-to-4 years |
| Possession of a firearm during a felony<br>(Mich. Comp. Laws § 750.227b) | - | 2 years |

The two-year sentence for the firearms offense runs consecutively; all other sentences are concurrent.

Because petitioner entered a guilty plea, state law did not provide him an appeal of right.  Rather, petitioner, through appointed counsel, sought leave to appeal to the Michigan Court of Appeals.  Germane to the present proceeding, petitioner asserted on appeal that the trial court violated the plea agreement, pursuant to which the minimum sentence on the arson charge was not to exceed three years.  Both the Michigan Court of Appeals and Michigan Supreme Court denied leave to appeal.

The *pro se* habeas corpus petition sets forth three grounds for relief:

(1)     The sentencing agreement should be enforced because defendant was not responsible for the breach of the plea agreement found by the trial court.

(2)     The trial judge abused his discretion by refusing to abide by the sentencing agreement.

(3)     The trial court erred in refusing to allow petitioner to withdraw his guilty plea as a result of the breach of the plea agreement.

(Petition, ¶ 12).  Respondent has filed an answer, pointing out that the sentencing agreement covered only one of the five charges and that this court should therefore exercise its discretion under the concurrent sentencing doctrine and refuse to review petitioner's claims.  Chief Judge Robert Holmes Bell has referred this matter to me for review of the record and issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b) and Rule 10 of the Rules Governing Section 2254 Cases in the District Courts.  For the reasons that follow, I conclude that petitioner is not entitled to habeas corpus relief.

## **Proposed Findings of Fact**

The state-court prosecution arose from events that took place in the City of Detroit in 2002.  Petitioner, a fireman in the City of Detroit who had previously served for twelve years as

a police officer, was charged with setting fire to two residences in Detroit, one on Appoline Street and one on Lahser Road. Each fire was started with gasoline. In addition, petitioner was charged with entering the apartment on Lahser Road, armed with a handgun, for the purpose of committing the arson. In the course of approaching the Lahser apartment, petitioner fired two shots into the residence. The Appoline Street apartment was that of Arienne Smith, with whom petitioner was romantically involved at the time. The Lahser apartment was that of her sister, Lisa Smith. Both events took place on June 10, 2002.

Petitioner's conduct gave rise to the filing of a seven-count criminal information in the Wayne County Circuit Court. Counts 1 and 2 charged him with separate instances of arson of a dwelling house. Count 3 charged intentional discharge of a firearm at a dwelling. Count 4 charged defendant with fleeing and eluding a police officer, third degree. Count 5 charged possession of a firearm during the commission of a felony. Counts 6 and 7 charged two separate instances of first-degree home invasion, which involves breaking and entering an occupied dwelling with intent to commit another specified felony therein.

Petitioner and counsel appeared before Judge Thomas M. Kenny of the Wayne County Circuit Court on October 3, 2002, for the entry of a guilty plea pursuant to a plea agreement. (*See* Plea Transcript (PT), docket # 9). After placing petitioner under oath, the court reviewed each of the seven felony charges, and the statutory penalties prescribed for each. (PT, 4-5). The court then summarized the plea agreement, pursuant to which: (1) petitioner agreed to plead guilty to count 1 (arson of a dwelling house) as charged; (2) petitioner agreed to plead guilty to a reduced charge of preparation to burn property valued at greater than $20,000.00, in lieu of the arson charge in count 2; (3) petitioner agreed to plead guilty to count 3 (intentional discharge of a firearm at a

dwelling); (4) the prosecution agreed to dismiss count 4 (fleeing and eluding a police officer, third-degree); (5) petitioner agreed to plead guilty to count 5 (possession of a firearm during commission of a felony); (6) the prosecutor agreed to dismiss count 6 (first-degree home invasion of the residence on Appoline); (7) petitioner agreed to plead guilty to count 7 (first-degree home invasion regarding the Lahser apartment).  (PT, 6).  The court also summarized certain agreements concerning the sentence.  First, petitioner would receive a sentence of 3-to-20 years on the charge of arson of a dwelling house, count 1.  This was the only agreement regarding a prison sentence set forth on the record. (PT, 7).  No other count was mentioned.  Petitioner agreed to make restitution in the amount of $9,000.00 to Lisa Smith.  The court agreed to make certain recommendations to the Department of Corrections concerning treatment.  Defendant agreed not to have assaultive contact with Arienne Smith and "no contact whatsoever with Lisa Smith."  (*Id.*).  The court would take the felony-firearm count under advisement, until the time of sentencing.  (*Id.*, 7-8).

Both attorneys acknowledged that the court's summary was a "fair statement" of the plea agreement.  The court directly asked petitioner whether it had "stated the complete agreement as you understand it," to which petitioner answered, "Yes, your Honor."  (PT, 8).

The court then reviewed with petitioner the constitutional rights that he gave up by entering a plea and questioned petitioner concerning the factual basis for each count.  Both attorneys acknowledged that there was a factual basis for the plea and that the court had complied with the court rule.  (PT, 11).  At the end of the plea hearing, the court continued petitioner's bond, on condition that he not have any contact with Lisa Smith "or be in the immediate vicinity."  (PT, 12).

Immediately after the plea hearing, on his way to the probation office, petitioner had an altercation with Lisa Smith, which she apparently instigated.  During the course of the altercation,

-4-

petitioner punched Lisa Smith in the face.  This incident gave rise to bond revocation proceedings and the institution of new criminal charges against petitioner.

Petitioner and counsel appeared before Judge Kenney on November 21, 2002, for sentencing.  At the outset of the sentencing hearing, the court conducted a lengthy evidentiary hearing concerning the altercation between petitioner and Lisa Smith.  (*See* Sentencing Transcript (ST), docket # 10).  The court took testimony from Lisa Smith, Arienne Smith[1] and petitioner himself.  The testimony established that Lisa Smith had begun the confrontation by screaming at petitioner and spitting at him, and that petitioner had ended the matter by grabbing Lisa Smith by the throat and punching her twice in the face.  After hearing from counsel, the court found that Lisa Smith "did in fact initiate the contact with the defendant" because she was angry and upset that "unbeknownst to her the person who had victimized Lisa Smith had in fact married her sister."  (ST, 58).  The court found that one of the explicit provisions of the plea agreement was that there "would be no contact with Lisa Smith."  (ST, 59).  The court determined that the plea agreement required petitioner to walk away, despite Lisa Smith's provocation but that "he stopped and grabbed her around the throat and did in fact strike her several times to the point where the police had to intervene to pull him off."  (ST, 59-60).  The court found beyond a reasonable doubt that petitioner violated the conditions of bond and the conditions of the plea agreement.  (*Id.*, 60).  The court went on to say that petitioner's violation of the plea agreement relieved the court of any obligation to adhere to the sentencing agreement.  "One cannot realistically expect that the failure to comply with the terms of the agreement will merit the enforcement of the earlier agreement."  (ST, 60-61).

---

[1] Shortly before petitioner entered a plea of guilty, he and Arienne Smith were married.  The sentencing transcript therefore identifies her as "Arienne Bullock."  (ST 22).

Defense counsel immediately requested that the court allow petitioner to withdraw his guilty plea and proceed to trial, in light of the nullification of the plea agreement by the court.  The court refused to set aside the guilty plea, finding that the plea was entered into knowingly, voluntarily, and willingly.  (ST, 61).

After hearing allocution from counsel, petitioner, and the victim, the court sentenced petitioner to concurrent terms of 5-to-20 years on both the home invasion charge and the charge of arson of a dwelling house, concurrent 1-to-4 year terms on the charges of preparing to burn property and discharge of a firearm into a residence, and a mandatory, consecutive two-year term on the felony-firearm charge.  (ST, 70-71).

Because petitioner was convicted pursuant to a guilty plea, state law did not afford him an appeal of right.  Rather, appellate review is only by leave granted.  *See* MICH. CONST. art. 1, § 20; MICH. COMP. LAWS § 770.3a.  Petitioner sought leave to appeal, and the trial court appointed counsel for this purpose.  On July 25, 2003, counsel filed an application for leave to appeal, setting forth three grounds for relief:

(1)     The sentencing agreement in this matter should be enforced because defendant was not responsible for the circumstances that caused the alleged breach on his part.

(2)     Defendant is entitled to appellate review of his sentences because they are disproportionate to the offenses and an abuse of sentencing discretion.

(3)     It was clear error for the trial court to deny defendant's motion to withdraw his guilty plea.

(Application for Leave to Appeal, found in Court of Appeals record, docket # 11).  By standard order entered September 3, 2003, the Court of Appeals denied the application for lack of merit.  Petitioner

filed a timely application for leave to appeal to the Michigan Supreme Court, which was denied by standard order entered February 27, 2004.  (Supreme Court record, docket # 12).

This habeas corpus action followed.  Although the petition appears to contain three grounds for relief, grounds 2 and 3 are essentially duplicative.  In ground 1, petitioner asks the court to specifically enforce the sentencing agreement, because petitioner was not responsible for the altercation with Lisa Smith.  In grounds 2 and 3, petitioner seeks to withdraw his guilty plea because of an alleged breach of the plea agreement.

## AEDPA Standard

Because petitioner filed his habeas application long after the April 1996 enactment of the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA"), the provisions of that law govern the scope of the Court's review. *See Penry v. Johnson*, 532 U.S. 782, 791 (2001).  The AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone*, 125 S. Ct. 847, 853 (2005)(citations omitted).  If a state court adjudicated the claim, AEDPA standards must be applied.  28 U.S.C. § 2254(d).  Thus, even in instances where a state court has not clearly articulated its reasoning, if the circumstances suggest that the state court actually considered and decided the issue, the review is not *de novo,* but is limited by the deferential AEDPA standards.  *See Howard v. Bouchard*, 405 F.3d 459, 467 (6th Cir. 2005); *Onifer v. Tyskiewicz*, 255 F.3d 313, 316 (6th Cir. 2001); *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). *De novo* review is restricted to instances where the state court did not address the merits of a claim.

In that limited set of circumstances, "there are simply no results, let alone reasoning, to which [the habeas] court can defer." *McKenzie v. Smith*, 326 F.3d 721,727 (6th Cir. 2003), *cert. denied*, 540 U.S. 1158 (2004); *see also Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Hill v. Mitchell*, 400 F.3d 308, 313 (6th Cir.) ("[W]hen a claim has not been adjudicated on the merits in State Court proceedings, and has not been procedurally defaulted, we look at the claim *de novo* rather than through the deferential lens of AEDPA.") (citations omitted), *cert. denied*, 126 S. Ct. 744 (2005); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

The AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). Section 2254(d) states that an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Section 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning. A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than the [Supreme Court] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. at 694 (citations omitted). A federal court

-8-

may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions, but unreasonably applies it to the facts of the particular case, or if the state court unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams v. Taylor*, 529 U.S. 362, 407 (2000); *see Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 655-56 (6th Cir. 2001).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams*, 529 U.S. at 412; *Bailey*, 271 F.3d at 655. This court may not consider decisions of lower federal courts in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *See Williams*, 529 U.S. at 381 ("If this Court has not broken sufficient legal ground to establish an asked for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar."); *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d at 943. The AEDPA standard includes an important temporal limitation. "'[C]learly established Federal law as determined by the Supreme Court of the United States,' refers to 'the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Dennis v. Mitchell*, 354 F.3d 511, 517 (6th Cir. 2003) (quoting *Williams*, 529 U.S. at 412). Thus, the inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d at 318; *see Miller v. Webb*,

385 F.3d 666, 672 (6th Cir. 2004)(describing the issue of whether the law was clearly established by Supreme Court precedent as a "threshold inquiry").

Regardless of the subsection of 2254(d) relied on by the petitioner, AEDPA requires heightened respect for state factual findings.  28 U.S.C. § 2254(e)(1); *see Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence 28 U.S.C. § 2254(e)(1); *Payne v. Bell*, 418 F.3d 644, 663-64 (6th Cir. 2005); *Lancaster*, 324 F.3d at 429.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Biros v. Bagley*, 422 F.3d 379, 386 (6th Cir. 2005); *Abdus-Samad v. Bell*, 420 F.3d 614, 620 (6th Cir. 2005).

<u>Discussion</u>

**1.**

In his first ground for relief, petitioner asks the court to overturn the finding of the state trial court that petitioner had violated the plea agreement by assaulting Lisa Smith.  Petitioner argues that Lisa Smith began the altercation by spitting on him and scratching him on the face and that he was merely defending himself.  Petitioner does not contest the finding of the trial court that an assault on Lisa Smith would constitute a violation of the plea agreement.  Rather, he seeks to relitigate his claim of self-defense, which the trial judge rejected after hearing testimony from petitioner and other eye witnesses.  This decision was completely factual in nature.

Because the state appellate courts denied leave to appeal without treating the merits of any issue, this court's review of the legal issues in this case is *de novo*.  *McKenzie*, 326 F.3d at

-10-

727.  The factual findings of the trial court, however, stand on a different footing.  Under the governing provisions of AEDPA, the determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see Biros*, 422 F.3d at 386.  Petitioner has not presented any evidence, let alone clear and convincing evidence, that would undermine the findings of the state trial judge concerning matters of historical fact.  A review of the hearing record, moreover, shows that the findings of the state trial court were amply supported by the record.  Even petitioner's wife, who testified in his defense, offered no justification for a finding of self-defense.  Mrs. Bullock testified that Lisa Smith accosted petitioner and began calling him names.  Lisa then spit on petitioner.  Petitioner turned and "actually then the fight was on."  (ST, 26-27).  Petitioner struck Lisa Smith twice in the face.  His wife then tried to pull her husband off her sister.  (ST, 31-32).  Far from undermining the trial court's findings by clear and convincing evidence, the record adequately supports the finding that petitioner violated the plea agreement by assaulting Lisa Smith.[2]  In the absence of clear and convincing evidence to the contrary, the habeas court is bound by the fact-finding of the state trial court to the effect that petitioner assaulted Lisa Smith in violation of the plea agreement.  *See Lorraine v. Coyle*, 291 F.3d 416, 442-43 (6th Cir. 2002).

## 2.

        Petitioner's second and third claims for habeas corpus relief each challenge the refusal of the trial judge to allow petitioner to withdraw his guilty pleas after the court determined that the

---

[2] The party alleging violation of a plea agreement must do so by a preponderance of the evidence.  *United States v. Lukse*, 286 F.3d 906, 913 (6th Cir. 2002).  In the present case, the trial judge found a violation of the plea agreement by petitioner "beyond a reasonable doubt."  (ST, 60).

sentencing agreement set forth in the plea agreement was no longer binding, as a consequence of petitioner's violation of the agreement. I conclude that petitioner has not established grounds for habeas corpus relief, both because his claim is not supported by clearly established federal law, as enunciated by the United States Supreme Court, and because any error in this regard was harmless.

## A.

In adjudicating a habeas corpus petition, the district court may only grant relief if it concludes that the state-court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d). Consequently, the district court must find the basis for relief, if any, in the holdings of the Supreme Court, and not in *dictum*. *See Williams*, 529 U.S. at 362. If the Supreme Court has not broken sufficient legal ground to establish a particular constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar. *Id.* at 381. Consequently, to grant petitioner relief on his second and third claims, this court must base its finding upon holdings of the United States Supreme Court.

The Supreme Court has never held that a criminal defendant who first breaches a plea agreement may nevertheless insist upon its enforcement. The only clear holding of the Court with regard to the enforceability of plea agreements is found in *Santobello v. New York*, 404 U.S. 257 (1971). In *Santobello*, a defendant entered a guilty plea pursuant to the plea agreement, under which the prosecutor agreed to make no recommendation as to sentence. At the time of sentencing, a different assistant prosecutor, who was unfamiliar with the plea agreement, recommended the maximum one-year sentence. The Court held that when "a plea rests in any significant degree on

-12-

a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. at 262. The Court remanded the matter to the state courts for determination, within their discretion, as to whether there should be specific performance of the agreement or the defendant should be given the opportunity to withdraw the guilty plea. *Id.* at 263. The Court has thereafter reiterated the basic holding of *Santobello*, that "when the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand." *Mabry v. Johnson*, 467 U.S. 504, 509 (1984). The Court has not, however expanded the principles of *Santobello* to address a *defendant's* breach.

The Supreme Court has had only one occasion to examine the consequences of a breach of a plea agreement by the defendant himself. In *Ricketts v. Adamson*, 483 U.S. 1 (1987), the defendant was allowed to plead guilty to a reduced charge of second-degree murder in exchange for his promise to testify against other parties involved in the crime. The trial court accepted the plea agreement and imposed the agreed-upon sentence. The defendant thereafter testified against the other individuals, who were convicted of first-degree murder. The Arizona Supreme Court reversed the latter convictions and remanded for a retrial. At that point, the defendant refused to testify again, stating that he already satisfied his obligations under the agreement. In response, the prosecutor filed a new information charging defendant with first-degree murder. The Arizona courts vacated the second-degree murder conviction and reinstated the original charges, holding that the plea agreement contemplated defendant's testimony and cooperation at both trial and retrial and that defendant had violated the agreement's terms. Defendant was thereafter convicted of first-degree murder and sentenced to death. Defendant brought a habeas corpus action, claiming that the state had violated

-13-

his rights under the Double Jeopardy Clause.  After the Ninth Circuit found a violation of double jeopardy, the Supreme Court granted *certiorari* to decide "whether the Double Jeopardy Clause bars the prosecution of respondent for first-degree murder following his breach of a plea agreement under which he had pleaded guilty to a lesser offense, had been sentenced, and had begun serving a term of imprisonment."  483 U.S. at 3.

        In reviewing the double jeopardy issue, the Supreme Court made it clear that "the construction of a plea agreement and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law," and that the reasonable disposition of those issues by the state courts should not be disturbed.  483 U.S. at 5-6 n.3.  Once the state court has, within broad bounds of reasonableness, determined that a breach of a plea agreement results in certain consequences, "the federal habeas court then must independently assess the effect of those consequences on federal constitutional rights."  *Id.*  The Court determined that the Double Jeopardy Clause would generally preclude prosecution of respondent for the greater charge of first-degree murder, on account of his previous conviction of the lesser-included offense of second-degree murder.  The Court went on to hold, however, that "respondent's breach of the plea arrangement to which the parties had agreed removed the double jeopardy bar to prosecution of respondent on the first-degree murder charge."  483 U.S. at 8.  Although *Ricketts* is not directly on point, it gives no support to the proposition that a criminal defendant who first breaches a plea agreement can nevertheless insist upon its enforcement against the prosecution.  In fact, *Ricketts* suggests just the opposite.

        An examination of the holdings of the United States Supreme Court fails to reveal any clearly established constitutional principle that would allow a defendant who is found to be in

material breach of a plea agreement to insist nevertheless upon enforcement of those terms favorable to him.  Under AEDPA, this is the end of the matter, as a habeas corpus court is not authorized to expand upon constitutional principles enunciated by the Supreme Court in order to grant collateral relief.  If, however, resort is made to the decisions of the federal courts of appeals, one finds the widespread agreement that "a defendant who breaches a plea agreement forfeits any right to its enforcement."  *United States v. Wells*, 211 F.3d 988, 995 (6th Cir. 2000); *accord United States v. Skidmore*, 998 F.2d 372, 375 (6th Cir. 1993) ("[A] defendant's failure to fulfill the terms of a pretrial agreement relieves the government of its reciprocal obligations under the agreement.") (internal quotation marks omitted).  The other circuits are in agreement.  *See, e.g., United States v. Cimino*, 381 F.3d 124 (2d Cir. 2004); *United States v. Hare*, 269 F.3d 859, 862-63 (7th Cir. 2001); *United States v. David*, 58 F.3d 113, 114 (4th Cir. 1995) (Government relieved of its promise to seek a downward departure by defendant's absconding before sentencing, in violation of "an implicit term of the plea agreement."); *United States v. Ballis*, 28 F.3d 1399, 1409-11 (5th Cir. 1994); *United States v. West*, 2 F.3d 66, 69-70 (4th Cir. 1993) (citing *Ricketts* for the proposition that a defendant's breach "relieves the government of its obligation to conform to the agreement's terms even when defendant has relied to his substantial detriment by, for example, entering his guilty plea, subjecting himself to conviction, and beginning service of the sentence."); *United States v. Merritt*, 988 F.2d 1298, 1313-14 (2d Cir. 1993) (Government, despite its promise in plea agreement not to take position concerning sentencing, allowed to seek upward departure as a result of defendant's antecedent breach of plea agreement); *United States v. Tilley*, 964 F.2d 66, 70-72 (1st Cir. 1992).  The *Cimino* case is directly on point, as the Second Circuit found that defendant himself had breached the plea agreement, thereby relieving the Government of its commitment to certain

-15-

sentencing promises in the plea agreement.  The court further found that defendant had no right to

withdraw his guilty plea in the circumstances.  381 F.2d at 126-27.  If the Supreme Court of the

United States had indeed established a principle allowing a criminal defendant who breaches a plea

agreement to withdraw his guilty plea in these circumstances, that principle would have precluded

the result in all of these cases.  These federal appellate decisions, therefore, are strong evidence of

the lack of clearly established Supreme Court authority supporting petitioner's position.[3]

In summary, I conclude that petitioner's second and third grounds for habeas corpus

relief, which presume a constitutional right to withdraw a guilty plea in the circumstances of this

case, are not supported by the clear holding of any decision of the United States Supreme Court.

## B.

Even assuming that the trial judge's failure to adhere to the sentencing agreement

somehow violated a clearly established constitutional right, I find that any error was harmless.  Most

constitutional errors are subject to review under the harmless error standard of *Brecht v.*

*Abrahamson*, 507 U.S. 619 (1993).  Under this standard, habeas relief may be granted only where

the error had substantial and injurious effect or influence on the outcome of the case.  507 U.S. 623.

It is clear that errors in both the plea-taking process and in sentencing are not "structural" and

therefore are subject to harmless error review.  *See, e.g., United States v. Dixon*, 308 F.3d 229, 234

---

[3] Michigan law is consistent with these federal authorities.  A defendant is generally entitled to withdraw his guilty plea where the trial court refuses to follow a sentencing agreement, even if it is only a recommendation.  *See People v. Killebrew*, 330 N.W.2d 834, 842-43 (Mich. 1982).  However, the right to withdraw a plea is not absolute, and it is forfeited by defendant's own breach of the plea agreement.  *See People v. Freeman*, No. 253553, 2005 WL 2862030, at * 3 (Mich. Ct. App. Nov. 1, 2005); *People v. Kean*, 516 N.W.2d 128, 130 (Mich. Ct. App. 1994); *accord*, *People v. Dobschensky*, No. 223850, 2001 WL 1231818, at * 1 (Mich. Ct. App. Oct. 16, 2001).

(3d Cir. 2002) (applying harmless error analysis where defendant was misinformed of maximum sentence); *United States v. Ebel*, 299 F.3d 187, 191 (3d Cir. 2002); *United States v. Vasquez*, 271 F.3d 93, 104 (3d Cir. 2001) (*Brecht* requires defendant to show sentence would have been different in absence of error); *United States v. Westcott*, 159 F.3d 107, 112-14 (2d Cir. 1998). In the present case, the trial judge's refusal to abide by the sentencing agreement, which covered a single count of the Information, was clearly harmless and had no effect at all on petitioner's ultimate sentence.

The sentencing agreement, as articulated on the record at the plea hearing, covered only count 1, arson of a dwelling house. The record is devoid of evidence of a sentencing agreement with regard to any of the other four felonies to which petitioner entered a plea of guilty. Significantly, the sentencing agreement did not address the penalty for count 5, possession of a firearm during commission of a felony. By statute, a two-year prison term is mandatory, and must be served consecutively with and preceding any term of imprisonment imposed for a conviction of the predicate felony. MICH. COMP. LAWS § 750.227b(2), (3); *see People v. Clark*, 619 N.W.2d 538 (Mich. 2000). Consequently, petitioner's guilty plea required him to serve the two-year sentence on count 5, in addition to any promised sentence on count 1.

The other three charges to which petitioner entered a plea of guilty were likewise not addressed by the sentencing agreement. The sentencing judge was therefore free to impose any lawful sentence on the remaining charges of first-degree home invasion, discharge of a firearm toward a building, and preparation to burn property worth $20,000.00 or more. Michigan has an indeterminate sentencing system, in which the sentencing court imposes both a minimum and a maximum sentence. *See* MICH. COMP. LAWS § 769.8. The maximum is not determined by the trial judge, but is set by law. *See People v. Claypool*, 684 N.W.2d 278, 286 n.14 (Mich. 2004). The

-17-

judge sets only the minimum sentence, after consulting advisory sentencing guidelines. *Id.* Beyond the constraint imposed by the guidelines, state law requires only that the minimum sentence may not exceed two-thirds of the maximum. *See People v. Tanner*, 199 N.W.2d 202, 204-05 (Mich. 1972). Therefore, for all counts of conviction (except the felony-firearm count, for which the mandatory sentence was a consecutive two-year term), the sentencing judge was required to impose sentence with both a minimum and maximum term. Only the arson sentence was subject to the plea agreement, with the minimum term being set at three years; the maximum, by law, was twenty years. Assuming that the trial court violated the plea agreement by imposing a five-year minimum term on the arson count, the court was nevertheless free to impose any lawful sentence on the remaining charges. The court chose to sentence defendant to a concurrent sentence of 5-to-20 years for first-degree home invasion. Therefore, even had the trial court abided by the plea agreement by sentencing petitioner to a three-year minimum term on the arson conviction, petitioner would nevertheless be obliged to serve a minimum of five years on the first-degree home invasion conviction. For this reason, the court's deviation from the plea agreement, even if it were binding, had no practical effect on petitioner's sentence.[4]

The Sixth Circuit decision in *Smith v. Mitchell*, 348 F.3d 177 (6th Cir. 2003), is directly on point. *Smith* involved habeas corpus review of multiple death sentences. One of

_____

[4] Respondent urges the court to apply the discretionary concurrent sentencing doctrine, under which a court may decline to hear a substantive challenge to a conviction when the sentence on the challenged conviction is being served concurrently with an equal or longer sentence on a valid conviction and no collateral consequence to the defendant is involved. *See United States v. Hughes*, 964 F.2d 536, 541 (6th Cir. 1992); *Dale v. Haeberlin*, 878 F.2d 930, 935 n.3 (6th Cir. 1989). It is clear that this doctrine applies to habeas corpus actions. *See Andresen v. Maryland*, 427 U.S. 463, 469 n.4 (1976). This case would be an apt occasion for application of that doctrine. However, because the error involved in this case, if any, appears harmless, it is not necessary to determine whether this discretionary doctrine should be invoked.

-18-

petitioner's arguments was that the imposition of multiple death sentences for a single homicide violated double jeopardy. The Sixth Circuit determined that any sentencing error in this regard was subject to the *Brecht* test for harmlessness, which requires a showing of "substantial and injurious effect" resulting in "actual prejudice." 348 F.3d at 210. Because the sentences were concurrent, petitioner could not establish prejudice. The same result obtains in the present case. Specific performance of the agreed-upon 3-to-20 year sentence on the arson count would avail petitioner nothing, because the concurrent, unchallenged 5-to-20 year sentence for home invasion would remain intact. Petitioner cannot show prejudice.

The trial court's imposition of a 5-to-20 year sentence on petitioner's conviction for first-degree home invasion renders harmless any error involved in the concurrent sentence for arson. On this alternative ground, I conclude that defendant is not entitled to habeas corpus relief.

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied.

Dated:   January 5, 2006                          /s/  Joseph G. Scoville
                                                  United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).